**Gordon Reevis BETHEL, Plaintiff in Error,**

v.

**The STATE of Oklahoma, Defendant in Error.**

**No. A–15701.**

Court of Criminal Appeals of Oklahoma.

Aug. 30, 1971.

Don Anderson, Public Defender, Wayne Hagle, Asst. Public Defender, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Hugh H. Collum, Asst. Atty. Gen., for defendant in error.

BUSSEY, Presiding Judge.

Gordon Reevis Bethel, hereinafter referred to as defendant, was charged in the District Court of Oklahoma County with the offense of Murder; he was convicted of the offense of Manslaughter in the First Degree. Punishment was fixed at forty-five years imprisonment, and from said judgment and sentence, a timely appeal has been perfected to this Court.

At the trial, Officer Smith testified that in answer to a call on August 30, 1969, at 7:37 p. m., he went to 740 Southeast Forty-First Street in Oklahoma City concerning a knife fight. The defendant met him at the door, and told Smith that he and his brother-in-law had scuffled, and that his brother-in-law had fallen on a stob in the front yard. Smith saw the deceased lying on a couch with a bloody wash cloth covering a puncture in the heart area. Finding no pulse he called an ambulance and arrested the defendant. He found a 12-inch butcher knife in a bedroom, and identified State's Exhibit One as the knife.

Doctor Boone, Medical Examiner of Oklahoma County, testified that on August 30, 1969, he viewed the body of one Larry Ralph Wilson at South Community Hospital about 9:30 p. m. He observed an incisional wound near the left nipple, one and one-half inches wide, which, in his opinion, was the cause of death. He believed the wound to be consistent with State's Exhibit One.

Officer Hill testified that he went to 740 Southeast Forty-First Street that evening and took pictures. He found a medium-size pocket knife on Wilson's body, and a liquor bottle in the living room area of the house. Robert Franklin Brawdy testified that he was 15 years old, and lived at 736 Southeast Forty-First Street. On the afternoon of August 30, 1969, he was in his front yard, and saw the defendant pull up in a yellow Ford, enter the house, leave in two or three minutes, get in the car, and drive down the street about 40 feet. Wilson then went into the street and said something to the defendant, who stopped the car, got out and ran back, pulling a knife from his pants. The defendant then stabbed Wilson in the left chest. Defendant then hit Wilson with his fists, knocking him down, and sat on Wilson, holding a butcher knife at Wilson's throat. Brawdy then went into his house, and told his parents, came back outside, and by that time, the defendant was helping Wilson into the house. He did not observe any weapon in Wilson's hands.

James Franklin Brawdy testified that he was Robert's father, and lived next door to defendant. He first saw Wilson backing up in the front yard with his hand on his chest. Brawdy called the police, and when he looked out the window again, defendant and Wilson were wrestling, defendant being astraddle of Wilson, and holding a knife at the latter's throat. Wilson had been drinking earlier in the day.

Jimmy Ray Going testified that he was 11 years old, and lived at 713 Southeast Forty-First Street. He went over toward the defendant's house that afternoon. He heard Wilson call something as defendant was backing the car out of the driveway. Defendant stopped, got out of his car, and ran toward Wilson, and they struggled. He then observed defendant help Wilson into the house. He did not see any weapon in Wilson's hands.

James Lee Brawdy testified he was 12 years old, and was in the house that afternoon when his brother, Robert, came in and told of the fight. James watched it through the window, and saw the defendant hit Wilson. He saw them struggle, and saw defendant on top of Wilson, holding a knife at the latter's throat.

Frankie Brawdy testified that she is James Brawdy's daughter, and lived at home next door to the defendant and his wife. Frankie was in the bedroom looking out the window, and saw defendant leave and saw Wilson call out something, and she saw the defendant return. She looked away, and when she turned around again, she saw blood on Wilson's shirt. Defendant went toward his car, and Wilson called him again, whereupon defendant knocked him down again and sat astraddle of him. At this point, Frankie went outside and saw the defendant pushing Wilson into the house, and heard Wilson calling "Stop." The defendant replied what sounded like, "No, I am going to kill you." She did not observe any weapon in Wilson's hands.

Gaylene Bethel testified that she was defendant's wife, and Wilson's sister. She saw part of the struggle between the defendant and Wilson, first one and then the other being on top. She testified the trouble started between the two men the night before. The three of them had gone out and Wilson got "pretty well drunk," and became angered when defendant refused to lend him the car to get more liquor. Wilson struck the defendant, and the latter left to avoid trouble. Wilson had also pulled a knife on the defendant that night. Wilson expressed the desire for revenge on defendant, and the next morning had consumed one-half pint of liquor, and part of another. She testified that Wilson wanted to live there, and run the defendant away from the home. Prior to defendant's arrival that afternoon, Wilson sat in the front yard with the stated purpose of waiting to run defendant away. Wilson had a knife after he got mad at the defendant the night before. During the morning, the defendant returned several times to find out if Wilson had cooled off so there would not be trouble. She

testified that she had used State's Exhibit One to cut a rope, and left it in the yellow Ford that the defendant was driving. In the struggle with the knife, defendant held the back of the blade toward Wilson's throat. After the fight, she and her husband applied wet cloths to Wilson's head and chest.

The defendant testified that the trouble had started between him and Wilson the night before over defendant and defendant's wife. They had been separated, and recently reunited. Wilson was pretty well drunk, and wanted to borrow defendant's car, which defendant refused. Wilson pulled a knife on defendant, who moved away to avoid trouble. The defendant took his wife and Wilson home that night, then left to avoid trouble. The next day he came home and left twice when he learned that Wilson was still angry. Defendant returned home again, and after finding out that Wilson was still angry, he started to drive away in his car. He testified that Wilson started hollering vulgar language at him, and said that, " * * * if I did come back he would kill me * * * " He stated that he had taken so much that he could not take any more, so he got out of his car. He did not know whether he had the knife with him or not. He started toward Wilson, and Wilson rushed toward him with his hand in his pocket. He did not remember anything that happened after they started struggling.

The State called two police officers in rebuttal, who testified that defendant's wife told them that defendant procured the knife from the kitchen, after telling her that he had been hit in the head.

■ The first proposition asserts that the verdict is not supported by the evidence. This Court has consistently held that where there is competent evidence in the Record from which the jury could reasonably conclude that the defendant was guilty as charged, the Court of Criminal Appeals will not interfere with the verdict, even though there is a sharp conflict in the evidence, and different inferences may be drawn therefrom, since it is the exclusive province of the jury to weigh the evidence and to determine the facts. Jones v. State, Okl.Cr., 468 P.2d 805 (1970).

■ The final proposition contends that the punishment is excessive. The question of excessiveness of punishment must be determined by a study of all the facts and circumstances in each particular case. We have previously held that the Court of Criminal Appeals does not have the power to modify a sentence, unless we can conscientiously say that under all facts and circumstances the sentence is so excessive as to shock the conscience of the Court. Ransom v. State, Okl.Cr., 453 P.2d 301. From the foregoing statement of facts, we cannot conscientiously say that a sentence of forty-five years shocks the conscience of this Court, in that the evidence would have been sufficient to support a conviction of the offense of Murder.

In conclusion, we observe that the Record is free of any error which would require reversal or justify modification, and under such circumstances, we are of the opinion that the judgment and sentence should be, and the same is, hereby affirmed.

BRETT and NIX, JJ., concur.