James Earl **HARRIS**, Plaintiff in Error,

v.

The **STATE** of Oklahoma, Defendant in Error.

No. A–17340.

Court of Criminal Appeals of Oklahoma.

May 17, 1972.

Don Anderson, Public Defender, Oklahoma City, for plaintiff in error.

Larry Derryberry, Atty. Gen., Jeff L. Harmann, Asst. Atty. Gen., for defendant in error.

BUSSEY, Presiding Judge:

James Earl Harris, hereinafter referred to as defendant, was charged in the District Court of Oklahoma County, Oklahoma, with the offense of Murder; he was convicted of the crime of Manslaughter in the First Degree. His punishment was fixed at one hundred (100) years imprisonment, and from said judgment and sentence, a timely appeal has been perfected to this Court.

At the trial, Marshall Devers testified that on the afternoon of March 15, 1971, he was at 2001 North Wisconsin in Oklahoma City. He, Tommy Gibson, John Russell and the defendant "kidded around while and then we got a bottle—we had got a bottle out there and we started drinking it." (Tr. 7) They had a friendly conversation for approximately thirty minutes until John Russell drank the rest of the bottle and threw it down on the porch, breaking the bottle. The defendant told him not to be throwing bottles at the porch and they started arguing. John Russell pushed a pregnant girl who was standing in front of him and started toward the defendant. Defendant "backed up and pulled a little old pistol and started shooting." (Tr. 10) Russell turned around and ran, and then laid down in front of the car. Devers, Gibson and the pregnant girl were "shook up" and left the premises.

Tommy Gibson testified that he went to 2001 North Wisconsin on the afternoon in question with Devers. The defendant came out to the car first followed shortly thereafter by John Russell. They offered James a drink and before he could get a chance, Russell took the bottle, finished it and threw it at the porch. Marshall Devers and the defendant both told Russell that he shouldn't have done that. Russell pushed a girl that was standing between he and the defendant and "charged at the defendant." Defendant stepped back several steps, pulled his pistol and fired. Russell turned, started running away and the defendant shot a second time. He testified on re-cross examination that he was not completely certain that Russell had turned completely around at the time of the second shot.

Officer Nutt testified that when he arrived at the scene he observed a negro male lying just north of the house and a negro female and the defendant on the front porch. He asked the defendant who had shot this man and the defendant replied, "I did." He asked the defendant where the gun was and the defendant indicated that it was in his right back pocket. Officer Campbell removed the gun from the defendant's pocket. He testified on cross examination that the defendant did not attempt to run and was very cooperative.

Officer Campbell's testimony did not differ substantially from that of Officer Nutt.

Officer Logan testified that when he arrived at the scene there were approximately ten or twelve people in the parking lot and three officers. He asked what happened and the defendant stated, "I shot the man." He asked the defendant to step into the scout car and advised him of his constitutional rights. He told the officer that he and Russell argued over Russell throwing the bottle at the front porch. Russell pushed the lady toward him, indicating that he was running away from the defendant. He testified that he later talked to the defendant at the jail and the defendant stated that they had been arguing all day and that he really didn't have a reason to shoot Russell.

Detective Campbell testified that he investigated the shooting and took custody of the pistol. He advised the defendant of his constitutional rights and the defendant subsequently made a statement to the effect that he and Russell argued over Russell throwing the whiskey bottle at the porch; that they had been arguing earlier in the day when Russell deliberately burned a hole in the couch; that Russell shoved the girl and crouched down and appeared to be coming toward him, and the defendant pulled the gun and fired.

Officer Bevel testified that he took various photographs of the scene and took custody of the physical evidence, including the pistol and a bullet removed from the body of the deceased. He turned the pistol and bullet to the State Bureau of Investigation.

Ray Lambert, a ballistics expert for the Oklahoma State Bureau of Investigation, testified that in his opinion the bullet, Exhibit Three, taken from the body of the deceased, was fired from the pistol.

The parties stipulated that Dr. Pless, the medical examiner, testified that he performed an autopsy on the person of John Russell and that, in his opinion, the cause of death was gunshot wound in the anterior abdomen and one in the right flank.

For the defense, Mary Brown testified that she had been living with the defendant at the Wisconsin Street address for approximately one week. She testified that Russell had been antagonizing the defendant since early the morning of the day in question. She was coming home from the store when she observed Russell grab a whiskey bottle from the defendant's hand and threw it on the porch. Defendant told him not to throw the bottle because of the baby, but Russell threw the bottle anyway. Russell then pushed his girl friend and started coming towards the defendant. The defendant backed up and pulled his gun. Russell kept coming and the defendant fired. The defendant told her to call the police. She testified that the defendant had not threatened Russell prior to the shooting and that the gun was purchased

at her request. On cross examination she testified that she was the common law wife of the defendant and had one child by him.

The defendant testified that on the day in question he and his common law wife, Mary, were living with his cousin, Cornell King, at 2001 North Wisconsin. He testified that he had a bullet lodged in his head and was not able to engage in any physical combat. He had known the deceased while in service and helped him find employment at the Coca Cola factory. He had not had any trouble prior to the day in question with the deceased. The deceased was drinking and provoking him throughout the day. The deceased stated, "I whip people bigger than you are." (Tr. 107) Defendant told him that he didn't have any argument with him but that he was not going to fight him because he couldn't stand any pressure around his head. After Marshall Devers arrived the deceased grabbed the bottle from him, turned it up and threw the bottle on the porch. He stated, " 'Why do you want to throw the bottle on the porch? You see my little baby playing on the porch barefooted,' and he said, 'I don't care.' He asked me if I wanted to whip him and what I was going to do about it and I said, 'Man, I'm not going to do nothing,' and the man turned toward me and I started backing up." (Tr. 110) Russell pushed the girl and started toward the defendant. The defendant jumped back, grabbed his pistol and fired two shots. He testified that he was "Mostly trying to scare him. You know I was shooting sort of low." (Tr. 112) He testified that he didn't know that he had struck him until he fell. He told Mary Brown to call the police and remained at the scene until the officers arrived.

The sole proposition asserts that the punishment is excessive. We have previously held that the Court of Criminal Appeals does not have the power to modify sentence, unless we can conscientiously say that under all facts and circumstances the sentence is so excessive as to shock the conscience of this Court. Bethel v. State, Okl.Cr., 488 P.2d 580. From the foregoing

statement of facts, we are of the opinion that the sentence of one hundred (100) years does shock the conscience of this Court. The testimony of the actual witnesses to this shooting, including the State's witnesses, Devers and Gibson, do not differ substantially from the testimonies of the defendant and Mary Brown; that the deceased was the aggressor and was coming toward the defendant, who was backing up at the time the first shot was fired. The record reflects further that defendant was twenty-one years old, had a bullet lodged in his head and was unable to engage in any type of combat, and had not previously been convicted of a felony. As defendant succinctly points out in his brief:

> "It would appear that defendant was acting in self defense, however the jury was instructed on that and resolved the issue against him. But that does not justify a verdict of 100 years."

We are of the opinion that justice would best be served by reducing the judgment and sentence to a term of twenty-five (25) years and is so modified. The judgment and sentence is affirmed.

SIMMS and BRETT, JJ., concur.